# Illinois Official Reports

## Appellate Court

---

### *In re J.H.*, 2014 IL App (3d) 140185

---

| | |
|---|---|
| Appellate Court Caption | *In re* J.H. (The People of the State of Illinois, Petitioner-Appellee, v. Crystal H., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-14-0185 |
| Rule 23 Order filed<br>Motion to publish<br>allowed<br>Opinion filed | July 14, 2014<br><br>August 14, 2014<br>August 14, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent mother's parental rights were properly terminated where the trial court's finding that she failed to make reasonable progress toward the return of her minor daughter was not against the manifest weight of the evidence and the trial court properly admitted the records of a rehabilitation center as a business record to show that she continued her relationship with her paramour, who had whipped the child on the face with a belt and had a violent temper, notwithstanding respondent's contention that the State failed to show that the center was an "agency" pursuant to the Juvenile Court Act, since respondent failed to allege how the center failed to qualify as an agency and did not cite any case law supporting her argument. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-JA-308; the Hon. Albert Purham, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Louis P. Milot, of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE WRIGHT delivered the judgment of the court, with opinion. Presiding Justice Lytton and Justice O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1    The trial court found respondent mother, Crystal H., unfit for failing to make reasonable progress toward returning the minor, J.H., home. 750 ILCS 50/1(D)(m)(iii) (West 2012). Mother's parental rights were terminated and she appeals only the finding of unfitness. We affirm.

¶ 2                                    BACKGROUND

¶ 3    Minor J.H. was born on August 20, 2004. On October 27, 2010, the State filed a petition for adjudication of wardship alleging the minor was abused and neglected. The first count alleged the minor was abused because mother's paramour, Martel Willis, inflicted physical injury on the minor after he whipped the minor in the face with a belt. Count II alleged the minor's environment was injurious to her welfare because: (1) mother's paramour inflicted physical injury on the minor when he whipped her in the face with a belt; (2) mother was aware her paramour had a violent temper because mother was a victim of her paramour's domestic violence on at least two occasions and allowed her paramour to act as the minor's caretaker; (3) mother was going to take out an order of protection against her paramour, but did not; (4) mother allowed her paramour's mother to watch the minor; (5) mother failed to complete a drug test on October 25, 2010; and (6) on October 26, 2010, mother attempted to transfer guardianship of the minor to a relative. That same day, the trial court entered an order placing the minor in shelter care.

¶ 4    On February 7, 2011, the trial court entered a dispositional order finding mother unfit based on the allegations contained in the petition and mother's "drug use." The trial court named the minor a ward of the court and named the Department of Children and Family Services (DCFS) as her guardian. The trial court also ordered mother to execute all authorizations for releases of information requested by DCFS, obtain a drug and alcohol assessment and successfully complete any course of recommended treatment, perform three random drug drops per month, maintain stable housing, and successfully complete counseling, a parenting course, and a domestic violence course as recommended by DCFS.

¶ 5    At the July 11, 2011, January 9, 2012, and July 2, 2012, permanency review hearings, the trial court ordered the permanency goal to be to return the minor home within one year. At the fourth permanency hearing on November 6, 2012, the court ordered the goal changed to

substitute care pending termination of parental rights because mother failed to make "reasonable efforts" toward completing her service plan and the permanency goal.

¶ 6 On April 18, 2013, the State filed a petition to terminate mother's parental rights pursuant to the Adoption Act (the Act) (750 ILCS 50/1 *et seq.* (West 2012)). The petition alleged mother was an unfit person because she failed to make reasonable progress toward the return of the minor to her care during any nine-month period after the end of the initial nine-month period following the adjudication of neglect (specifically February 5, 2012, to November 5, 2012) (the relevant time period). 750 ILCS 50/1(D)(m)(iii) (West 2012).

¶ 7 On April 22, 2013, at the fifth permanency hearing, the trial court ordered the permanency goal to remain substitute care pending termination of parental rights.

¶ 8 On September 4, 2013, the matter proceeded to an unfitness hearing. On the State's motion and without objection, the trial court admitted into evidence mother's counseling records from Lutheran Social Services of Illinois. Mother objected to the admission of certified records from Proctor First Care and Human Service Center/White Oaks Rehabilitation Center (White Oaks) on the grounds those records constituted inadmissible hearsay. After the State informed the court that the documents were created in the normal course of business and were certified, the court admitted those records.

¶ 9 The counseling records from Lutheran Social Services revealed mother cancelled her counseling sessions on April 11, May 23, June 6, September 10, and October 29, 2012. In addition, mother failed to attend her counseling sessions on June 13, July 11, August 29, and October 4, 2012. On September 12, 2012, mother's counselor went to mother's home for a counseling session, but mother was not home or did not answer the door. On June 8, and August 1, 2012, mother's counselor noted mother was unwilling to implement the skills learned and had not made progress toward parenting the minor.

¶ 10 The records from Proctor First Care established mother tested positive for hydrocodone on August 6, 2012. Mother's substance abuse treatment records from White Oaks revealed mother attended treatment on April 13, 2012, and mother refused a request to provide a drug drop after staff noticed she appeared to be under the influence of some substance. Mother did not have any contact with the treatment center after July 27, 2012, resulting in mother's unsuccessful discharge from treatment on September 6, 2012.

¶ 11 The State presented the testimony of Jason Leigh, a police officer with the Peoria police department, who testified that on October 4, 2012, he was investigating a report of a stolen cell phone. In the course of this investigation, Officer Leigh learned that either mother or her paramour had the phone. Officer Leigh located mother sitting in the passenger seat of a vehicle, with her paramour in the driver's seat. When Officer Leigh questioned mother about the cell phone, mother first told him she did not know anything about the phone. Mother then told Officer Leigh she found the phone while walking near where she worked. Finally mother admitted to Officer Leigh she received the phone and some additional money in exchange for oral sex.

¶ 12 Catherine Sandven, a social worker with Lutheran Social Services, testified she began working on the minor's case in May 2012. According to Sandven, mother completed a domestic violence class and a parenting class, and attended all of her visits with the minor. Mother also completed a drug and alcohol evaluation, which recommended mother obtain treatment. In addition, mother was required to complete three random drug drops each month, but mother missed seven drug drops and tested positive for hydrocodone in August 2012.

When Sandven asked mother about the hydrocodone, mother indicated she was prescribed hydrocodone for back pain. Mother was unable to provide Sandven with a copy of the prescription.

¶ 13    On cross-examination, Sandven testified mother's remaining drug drops were clean during the relevant time period. In addition, Sandven agreed mother's attendance at a substance abuse treatment program was "sporadic." According to Sandven, mother told her that since "she was dropping clean [mother] felt that she did not need to attend treatment." Sandven was aware mother was arrested for stealing a cell phone, but mother denied stealing the phone.

¶ 14    Mother testified she had been prescribed hydrocodone by an emergency room physician after she twisted her foot. Mother explained she was unable to obtain a copy of the prescription, but her hospital records would show the drug was prescribed to her. Mother testified it was hard for her to "juggle" her treatment classes at White Oaks with her employment at Domino's Pizza. Mother's employer provided a letter advising DCFS mother missed some of her counseling and drug treatment classes due to work training. On cross-examination, mother testified she was fired from Domino's Pizza due to her arrest concerning the stolen cell phone and she was evicted from her apartment for failing to pay the full rent amount.

¶ 15    After hearing arguments, the trial court noted mother completed domestic violence counseling. In addition, the court found mother's relationship with her paramour to be "extremely troubling" because both mother and the minor were the victims of mother's paramour's physical abuse. In spite of this abuse to both mother and the minor, the court observed mother remained "willing to see [her paramour] for whatever purpose." The court noted that since mother told three stories to the police about the stolen cell phone, at least two of those accounts were untruthful. The court commented that mother failed to provide a copy of her prescription for the hydrocodone.

¶ 16    The court also observed that mother's attendance at her counseling sessions was "very inconsistent" and mother did not "utiliz[e] the tools what [*sic*] were being offered to her in order to make progress." The court stated mother was making "no progress for the most part whatsoever" during the relevant time period. The court concluded, "When I consider the reason this case was brought into court initially, based on a relationship with [mother's paramour] and domestic violence, and the abuse that her child has suffered, this court finds by clear and convincing evidence, despite some of the services that [mother] did do, that she has not made reasonable progress during the period of February 5, 2012, to November 5, 2012." The court entered a written adjudication order finding the State proved the petition by clear and convincing evidence.

¶ 17    The court terminated mother's parental rights after a best interest hearing on February 5, 2014, and entered a dispositional order on February 6, 2014. Mother timely appeals.

¶ 18                                ANALYSIS

¶ 19    On appeal, mother challenges only the trial court's finding of unfitness because she completed, or was in substantial compliance with, her court-ordered services. Mother argues the court improperly allowed the State to introduce the records from White Oaks as a business record under section 2-18(4)(a) of the Juvenile Court Act of 1987 (Juvenile Act) because the State failed to prove White Oaks constitutes an "agency" pursuant to the Juvenile Act. 705 ILCS 405/2-18(4)(a) (West 2012). Mother also submits the trial court relied on hearsay

statements contained in the improperly admitted records to establish mother continued a relationship with her paramour.

¶ 20 The State responds the business records were admissible and established mother did not make reasonable progress to correct the conditions that resulted in the minor being removed from mother's care. Specifically, the State contends mother continued to engage in a relationship with her paramour, failed to attend counseling sessions, refused to provide a drug drop, and did not make any progress toward parenting the minor.

¶ 21 We begin by considering mother's argument that White Oaks does not qualify as an agency pursuant to the Act. Section 2-18(4)(a) of the Juvenile Act provides, in relevant part:

> "Any writing, record, photograph or x-ray of any hospital or public or private agency *** made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of the business of the hospital or agency and that it was in the regular course of such business to make it ***. *** A certification by someone other than the head of the hospital or agency shall be accompanied by a photocopy of a delegation of authority signed by both the head of the hospital or agency and by such other employee." 705 ILCS 405/2-18(4)(a) (West 2012).

It is clear from the record that mother admitted she received substance abuse treatment from the staff at White Oaks. Thus, her treatment was not provided by an individual but, rather, a business or entity with multiple employees. Mother does not allege how White Oaks fails to qualify as an agency and does not cite to case law in support of this argument. The Juvenile Act instructs that its provisions must be liberally construed to accomplish its purpose. 705 ILCS 405/1-2(4) (West 2012). Moreover, well-established case law provides that a trial court can admit the health care records pertaining to a respondent in termination proceedings under section 2-18(4)(a). *In re Precious W.*, 333 Ill. App. 3d 893, 900 (2002). The records from White Oaks contained a "Certification and Delegation of Authority" that certified the records were made in the regular course of business. We conclude mother's records from White Oaks were admissible under section 2-18(4)(a) of the Juvenile Act. Mother does not direct this court to a specific reference in the White Oaks records pertaining to Martel Willis, her paramour. Further, our independent review of the White Oaks records does not reveal any direct or indirect reference to an ongoing relationship with this paramour during the relevant time period.

¶ 22 Under the Act, a parent can be found unfit if the parent failed "to make reasonable progress toward the return of the child to the parent during any 9-month period after the end of the initial 9-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(iii) (West 2012). Reasonable progress is an objective standard, measured by a benchmark encompassing the parent's compliance with the service plan and the court's directives in light of the conditions causing removal, as well as other conditions that would prevent the court from returning the minor to her parent's custody. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). Reasonable progress requires measurable movement toward reunification and occurs when a trial court can expect to order the minor returned to the custody of her parents in the near future. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). The State must prove unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067

(2004). The trial court's findings of unfitness are accorded great deference on review and will not be reversed unless they are against the manifest weight of the evidence. *Id.*

¶ 23 In this case, the trial court determined mother was unfit based on her failure to make reasonable progress toward returning the minor home from February 5, 2012, to November 5, 2012. During that period, mother had completed some of her court-ordered tasks, including visiting with the minor as scheduled, completing a domestic violence class, a parenting class, and a drug and alcohol evaluation. However, mother failed to successfully complete substance abuse treatment and failed to regularly attend her counseling sessions. In addition, mother missed seven drug drops and tested positive for hydrocodone. Although the court mentioned mother spent time with her paramour, the court did not attribute this statement to the contents of the White Oaks records. Instead, presumably based on Officer Leigh's testimony, the court concluded mother continued to spend time with her paramour. Based on this evidence, the trial court's finding that mother failed to make reasonable progress toward the return of the minor during the relevant nine-month period was not against the manifest weight of the evidence.

¶ 24                                    CONCLUSION

¶ 25 For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 26 Affirmed.