# Illinois Official Reports

## Appellate Court

---

**In re D.T., 2017 IL App (3d) 170120**

---

| | |
|---|---|
| Appellate Court Caption | *In re* D.T., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Sehrika S., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-17-0120 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | June 15, 2017<br><br>July 13, 2017<br>July 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 14-JA-184; the Hon. Katherine Gorman, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Charles M. Miller, of Miller Law Offices, P.C., of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
                        Justices Lytton and Schmidt concurred in the judgment and opinion.


**OPINION**

¶ 1      The State filed a petition for termination of parental rights against respondent, Sehrika S.,
         alleging respondent failed to make reasonable progress toward the return of the minor, D.T.,
         during a nine-month period following adjudication of D.T.'s neglect, pursuant to section
         1(D)(m)(ii) of the Adoption Act. 750 ILCS 50/1(D)(m)(ii) (West 2014). The trial court found
         respondent unfit pursuant to section 1(D)(m)(ii) of the Adoption Act and that it was in the
         best interest of D.T. to terminate respondent's parental rights. Respondent appealed, arguing
         the trial court erred in finding her unfit. We affirm the trial court's finding of unfitness.

¶ 2                                         FACTS
¶ 3      On August 4, 2014, the State filed a juvenile petition and subsequently amended the
         petition to allege D.T. was neglected and that his environment was injurious to his welfare. In
         the petition, the State alleged (1) D.T. was born on August 2, 2013, and an umbilical cord
         and meconium sample taken from D.T. tested positive for phencyclidine (PCP); (2)
         respondent also tested positive for cannabis and PCP at the time of D.T.'s birth; (3) on July
         30, 2014, while respondent was bathing D.T., she turned away to talk on the phone and D.T.
         became submerged underwater, stopped breathing, and turned blue; (4) respondent had
         attention-deficit/hyperactivity disorder, bipolar disorder, and schizophrenia, was not taking
         her medications, and reported that she would harm D.T. if she was not medicated; (5) on July
         30, 2014, respondent was sent for a drug drop, which she did not complete due to a lack of
         identification, at which time she left the building, walked into a parking lot, pulled her pants
         down, and urinated; (6) on August 4, 2014, the respondent received a ride from her paramour
         (E.W.) to a location where she entered a vehicle with men she barely knew and later reported
         being sexually assaulted by one of the men in the vehicle; (7) E.W. had been convicted in
         1996 for predatory criminal sexual assault; and (8) respondent had a criminal record that
         included criminal trespass to land (2014), DUI (2009), resisting police officers (2007), and a
         vehicle code offense (2007). The juvenile petition further alleged that D.T.'s father, Trechon
         H., had a criminal history, which included possession of a stolen vehicle (2014) and DUI
         (2012). The petition requested that the Department of Children and Family Services (DCFS)
         be made guardian of D.T. and that D.T. be made a ward of the court. On August 5, 2014, the
         trial court found it was a matter of immediate and urgent necessity that the minor be placed
         in temporary shelter care for his protection.

¶ 4      During the adjudication hearing on December 2, 2014, the trial court found the State had
         proven D.T. was neglected due to PCP found in his umbilical cord and meconium sample.
         The trial court indicated that the State had shown by a preponderance of the evidence that
         D.T. was neglected as a result of an injurious environment, which was not a result of physical
         abuse. On December 23, 2014, at the dispositional hearing, the trial court found the
         respondent to be unfit to care for, protect, train, or discipline D.T. or was unwilling to do so
         based on the contents of the State's petition. D.T. was made a ward of the court, and DCFS

was named guardian of D.T. The trial court ordered respondent to execute authorizations for the release of information and fully cooperate with DCFS, complete a substance abuse assessment where respondent would self-report and comply with treatment recommendations, perform two random drug screens per month, complete a parenting class, obtain a mental health exam and comply with treatment recommendations, obtain a psychological and psychiatric examination and comply with recommendations, resume psychiatric services, maintain stable housing, provide DCFS with any change of address within three days, provide DCFS with any and all information in relation to anyone DCFS believed had a relationship with respondent that would impact the minor, and to visit with the minor as designated by DCFS.

¶ 5    On August 18, 2015, during the initial permanency review hearing, the trial court held that respondent's efforts had been mixed and that the agencies had made reasonable efforts. The trial court ordered supervised visitation to be increased for an assessment of respondent's parenting abilities. Additionally, the trial court changed the permanency goal from a goal of 22 ("[t]he minor will be in short-term care with a continued goal to return home within a period not to exceed one year, where the progress of the parent or parents is substantial giving particular consideration to the age and individual needs of the minor" (705 ILCS 405/2-28(2)(B) (West 2014))) to a goal of 23 ("[t]he minor will be in short-term care with a continued goal to return home pending a status hearing" (705 ILCS 405/2-28(2)(B-1) (West 2014))).

¶ 6    A second permanency review hearing took place on February 9, 2016. The State showed that respondent committed a felony drug offense, which resulted in respondent having been incarcerated within a month of the previous permanency review hearing. Largely as a result of her incarceration, respondent only attended 7 of possible 22 visits with D.T. (respondent missed two visits because the agency was closed). The State also showed that respondent was unsuccessfully discharged from counseling due to her poor attendance. The trial court found that respondent had not made reasonable efforts toward the return home of D.T., noting respondent had admitted to drug use and unlawfully possessing a controlled substance. The permanency goal was changed from a goal of 23 (short-term care with a continued goal to return home pending a status hearing (705 ILCS 405/2-28(2)(B-1) (West 2014))) to a goal of 24 ("[t]he minor will be in substitute care pending court determination on termination of parental rights" (705 ILCS 405/2-28(2)(C) (West 2014))).

¶ 7    On August 12, 2016, the State filed a petition to terminate respondent's parental rights. The State's petition alleged that respondent was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2014)), in that respondent had failed to make reasonable progress toward the return home of the minor during any nine-month period following the adjudication of neglect, with the specified nine-month period being October 30, 2015, through July 30, 2016. Respondent filed a response denying the allegations against her in the termination petition.

¶ 8    On January 3, 2017, the trial court conducted a hearing to adjudicate respondent's fitness. Shawn Miller testified that he was the only caseworker that had handled respondent's case. Miller testified respondent maintained an apartment in Peoria that was suitable for a child but respondent did not live there between October 2015 and December 2015 because she was living in Chicago. Miller also testified respondent was not maintaining employment but acknowledged respondent was pregnant, which would impact her opportunities to obtain

employment. Between October 30, 2015, and February 2, 2016, respondent only attended 2 of 10 scheduled visits with D.T. and missed a DCFS case review. Visitation had not been increased as previously ordered on August 18, 2015, due to respondent's incarceration in Chicago for unlawful possession of a controlled substance. Respondent attended all monthly visitations with D.T. from February 9, 2016, through July 30, 2016.

¶ 9 Miller indicated that respondent had completed two drug and alcohol assessments and, based on respondent's self-reporting, no treatment was recommended. Miller further testified respondent did not complete any drug drops between October 30, 2015, and January 5, 2016. Between the end of January 2016 through the end of July 2016, respondent completed three drug drops that came back negative and one that tested positive for PCP and cannabis. In July 2016, respondent gave birth to another child whose umbilical cord tested positive for PCP.

¶ 10 The trial court found, by clear and convincing evidence, that respondent had not made reasonable progress within the nine-month period of October 30, 2015, through July 30, 2016, and found respondent to be unfit pursuant to section 1(D)(m)(ii) of the Adoption Act. The trial court noted that respondent was not compliant with random drug drops, attending counseling, attending to obligations while incarcerated in Chicago, and that respondent had given birth to another child whose umbilical cord sample tested positive for PCP. On February 7, 2017, the trial court conducted a best interest hearing and found it was in D.T.'s best interest to terminate respondent's parental rights.

¶ 11 Respondent appealed.

¶ 12 ANALYSIS

¶ 13 On appeal, respondent challenges the trial court's determination that she was unfit, under section 1(D)(m)(ii) of the Adoption Act, because she failed to make reasonable progress toward the return of the minor from October 30, 2015, through July 30, 2016. Respondent asserts that the trial court's finding—that she had not made reasonable progress—was against the manifest weight of the evidence. In support of this assertion, respondent points to her compliance with maintaining a stable residence appropriate for a child, completing a parenting class, receiving a psychological and psychiatric evaluation, and attending scheduled visits during the last half of the relevant nine-month period. Respondent also argues that she was allowed to believe she was progressing towards the goal of reunification when in actuality she had been placed in a position of assured failure because she was not referred to substance abuse treatment. Respondent asks, therefore, that we reverse the trial court's determination that she failed to make reasonable progress during the relevant nine-month period. The State, in response, argues the trial court's determination was proper.

¶ 14 I. Unfitness Finding

¶ 15 In this case, respondent argues the trial court's determination of parental unfitness was against the manifest weight of the evidence and should be reversed. The State contends the court's finding that respondent was unfit should be affirmed.

¶ 16 In Illinois, the power to involuntarily terminate parental rights is statutory and is derived pursuant to the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2014)) and the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/1-1 *et seq.* (West 2014)). *In re E.B.*, 231 Ill. 2d 459, 463 (2008). The involuntary termination of parental rights is a two-step process. 705

ILCS 405/2-29(2) (West 2014); *In re C.W.*, 199 Ill. 2d 198, 210 (2002). Initially, the court must find that a parent is unfit as defined in section 1(D) of the Adoption Act. 750 ILCS 50/1(D) (West 2014); *In re E.B.*, 231 Ill. 2d at 472. Section 1(D) lists several grounds upon which a finding of unfitness can be made. 750 ILCS 50/1(D) (West 2014). For instance, under section 1(D)(m)(ii) of the Adoption Act, a parent may be found unfit if he or she fails to make reasonable progress towards the return of the child within any nine-month period after an adjudication of neglect. 750 ILCS 50/1(D)(m)(ii) (West 2014). If the court makes a finding of parental unfitness under section 1(D) of the Adoption Act, the court then considers the best interests of the child in determining whether parental rights should be terminated. 705 ILCS 405/2-29(2) (West 2014); *In re J.L.*, 236 Ill. 2d 329, 337-38 (2010).

¶ 17   In the case at bar, the trial court found the respondent unfit under section 1(D)(m)(ii) of the Adoption Act because she failed to make reasonable progress toward the return home of D.T. during the period of October 30, 2015, through July 30, 2016. Reasonable progress is examined under an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). The benchmark for measuring a parent's reasonable progress under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and court's directives in light of the condition that gave rise to the removal of the child and other conditions which later become known that would prevent the court from returning custody of the child to the parent. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). Reasonable progress exists when the trial court can conclude that progress being made by a parent to comply with directives given for the return of the minor is sufficiently demonstrable and of such a quality that the trial court will be able to order the minor returned to parental custody in the near future. *In re J.H.*, 2014 IL App (3d) 140185, ¶ 22; *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). Failure to make reasonable progress toward the return of the minor includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care. 750 ILCS 50/1(D)(m) (West 2014); *In re C.N.*, 196 Ill. 2d at 217.

¶ 18   A determination of parental unfitness involves factual findings and credibility assessments that the trial court is in the best position to make; therefore, we will defer to the trial court's factual findings. *In re A.W.*, 231 Ill. 2d 92, 102 (2008); *In re Tiffany M.*, 353 Ill. App. 3d 883, 889-90 (2004). The trial court is to consider evidence occurring only during the relevant nine-month period mandated in section 1(D)(m) in determining whether a parent has made reasonable progress toward the return of the minor. *In re J.L.*, 236 Ill. 2d at 341. The State must prove parental unfitness by clear and convincing evidence before the trial court may terminate parental rights. 705 ILCS 405/2-29(4) (West 2014); 750 ILCS 50/1(D) (West 2014); *In re C.N.*, 196 Ill. 2d at 208. A trial court's finding of parental unfitness will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d at 208. Only if it is clearly apparent from the record that the trial court should have reached the opposite conclusion will the trial court's decision be against the manifest weight of the evidence. *Id.*; *In re Tiffany M.*, 353 Ill. App. 3d at 890.

¶ 19   In reviewing the record in this case, we cannot say the trial court's findings of parental unfitness based upon the respondent's failure to make reasonable progress toward the return of the minor during the nine-month time period of October 30, 2015, through July 30, 2016, was against the manifest weight of the evidence. Testimony of the caseworker regarding the

nine-month period showed that respondent failed to substantially fulfill obligations placed on her by the service plan and she failed to correct conditions that brought D.T. into care in the first place.

¶ 20 Specifically, respondent was to receive a psychiatric evaluation, comply with any recommendations, and resume psychiatric services. The psychiatrist who performed the evaluation recommended respondent continue counseling as a form of treatment, but respondent was unsuccessfully discharged from counseling. The counselor noted that respondent had not made any significant progress during her time in counseling and did not appear to be stable or to be making good choices. Additionally, while respondent was incarcerated in Chicago, she failed to meet the obligations placed on her by the court, which frustrated attempts to increase visitation and to further evaluate respondent's parenting abilities. See *In re J.L.*, 236 Ill. 2d at 342-43 (it is well-settled that a respondent's incarceration during the relevant nine-month period for demonstrating reasonable progress will not excuse lack of progress and will not toll the relevant time period). Further, the service plan required respondent to complete two random drug drops per month, but she missed multiple drug drops and failed her drug drop on February 3, 2016. Also, at the end of the relevant nine-month period, respondent gave birth to a child whose umbilical cord tested positive for PCP. Thus, the trial court's finding that respondent failed to make reasonable progress during the specified nine-month period was not against the manifest weight of the evidence.

¶ 21                                    II. Due Process

¶ 22 Additionally, respondent argues that she was allowed to believe that she was progressing towards the goal of reunification when in actuality the State placed her in a position of assured failure because at no time during the relevant period was she referred to substance abuse treatment despite evidence of her drug problems. In support of her argument, respondent cites *In re O.S.*, 364 Ill. App. 3d 628, 632 (2006), in which the trial court had ordered the foster parents, the biological mother, and O.S.'s half-sisters to inform O.S. that the woman he was visiting was "Jenny" instead of his mother. Consequently, when the best interest hearing took place, O.S. was found to be more attached to his foster parents than his biological mother. *Id.* at 633. On appeal in *O.S.*, the appellate court found the trial court's actions led the mother to believe that she was progressing towards the goal of reunification when, in fact, the arrangement ensured her failure of the best interest test and made the best interest hearing a futile gesture in violation of due process. *Id.* at 638.

¶ 23 "One of the fundamental rights protected under the fourteenth amendment is the right of parents to make decisions concerning the care, custody, and control of their children without unwarranted state intrusion." *Wickham v. Byrne*, 199 Ill. 2d 309, 316 (2002). The State's interference with fundamental parental childrearing rights is justified in limited instances in order to protect the health, safety, and welfare of children. *Id.* at 317. The due process clause of the United States Constitution provides heightened protection against government interference with fundamental rights of parents. *Id.* at 316. Due process in the context of interference with parental rights is achieved by compliance with the provisions of the Juvenile Court Act and fundamental fairness. *In re O.S.*, 364 Ill. App. 3d at 638.

¶ 24 In this case, the trial court's actions did not predetermine the outcome of the best interest hearing or lead respondent to believe that she was progressing towards reunification with her

child. As part of the service plan, respondent was to complete a substance abuse assessment. Based on her own self-reporting, respondent was deemed to not require substance abuse treatment, essentially ensuring she would not receive treatment. Additionally, trial court's changes of the permanency goals indicated respondent was not progressing toward reunification. Thus, we reject respondent's contention that there was a violation of due process that tainted the constitutionality of the termination of her parental rights.

¶ 25 We, therefore, affirm the trial court's finding that respondent was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act. See 750 ILCS 50/1(D)(m)(ii) (West 2014). We acknowledge the State's emergency motion to strike portions of the respondent's brief that referenced testimony presented at the permanency review hearing of February 9, 2016, of which the State argues the trial court had not taken judicial notice. However, we find it unnecessary to address the State's motion given our disposition.

¶ 26                                   CONCLUSION
¶ 27 For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 28 Affirmed.