NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190805-U

NO. 4-19-0805

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 20, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
| Petitioner-Appellee, | ) | No. 17JA8 |
| v. | ) | |
| Jeremiah S., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas M. O'Shaughnessy |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the judgment of the trial court that terminated respondent's parental rights because the trial court's findings were not against the manifest weight of the evidence.

¶ 2       Respondent, Jeremiah S., is the father of K.S. (born October 2016). In October 2019, the trial court found respondent was an unfit parent, and it found termination of respondent's parental rights would be in the minor's best interests. Respondent appeals, arguing that the trial court's (1) fitness determination and (2) best-interest determination were against the manifest weight of the evidence. We disagree and affirm the trial court's judgment.

¶ 3                                 I. BACKGROUND

¶ 4                                 A. Procedural History

¶ 5       In January 2017, the State filed a petition for adjudication of wardship, alleging in relevant part that K.S. was a neglected minor as defined by the Juvenile Court Act of 1987 (Act)

(705 ILCS 405/2-3(1)(b) (West 2016)) in that his environment was injurious to his welfare due to his mother's (1) drug use, (2) untreated mental health issues, and (3) leaving him with inadequate caregivers. Respondent was incarcerated at the time of filing. On the same day the petition was filed, the trial court conducted a shelter care hearing and placed temporary custody and guardianship with the guardianship administrator of the Department of Children and Family Services (DCFS).

¶ 6 In June 2017, the trial court conducted an adjudicatory hearing. The State presented evidence that the mother was using methamphetamine and frequently left K.S. at home with her 72-year-old grandfather, who suffered from gout and sometimes was unable to leave his bed. The mother left K.S. for days at a time with her whereabouts unknown. The court found the State proved the allegations in count I and found K.S. was a neglected minor.

¶ 7 In July 2017, the trial court conducted a dispositional hearing. The court entered a written order in which it found that it was in the best interest of K.S. and the public that K.S. be made a ward of the court and adjudicated a neglected minor. The court further found respondent unfit and unable, for reasons other than financial circumstances alone, to care for, protect, train, educate, supervise, or discipline the minor, and it would be contrary to the minor's health, safety, and best interest to be in his custody. The court placed guardianship and custody with the guardianship administrator of DCFS. The written order further admonished respondent that he was required to cooperate with DCFS and "comply with the terms of the service plan and correct the conditions that require the minor to be in care or [he] risk[s] termination of [his] parental rights."

¶ 8 B. The Termination Hearing

¶ 9 In July 2019, the State filed a motion for termination of respondent's parental

rights. The State alleged respondent was an unfit parent because he failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to K.S.'s welfare, (2) make reasonable efforts to correct the conditions which were the bases for the removal of K.S. within the nine-month period of November 2017 to August 2018, and (3) make reasonable progress toward the return of K.S. within the same nine-month period. 750 ILCS 50/1(D)(b), (m)(i)(ii) (West 2018).

¶ 10                                      1. *The Fitness Proceedings*

¶ 11        In October 2019, the trial court conducted the fitness portion of the termination hearing to address respondent's parental fitness. The State first presented the testimony of Kristen Larkin, the DCFS caseworker assigned to the case since it was opened in January 2017. Larkin testified respondent was incarcerated between June 2014 and October 2018. Larkin stated respondent was recommended for the following services: (1) substance abuse treatment, (2) housing, and (3) employment.

¶ 12        Regarding substance abuse treatment, Larkin testified that respondent tested negative for drugs in December 2018 and January 2019. Respondent also completed a substance abuse assessment that recommended outpatient treatment, but respondent never returned to the program. Larkin stated that respondent also stopped appearing for drug testing. In March 2019, respondent was arrested for, among other things, methamphetamine possession. Respondent bonded out in September 2019 but had not contacted Larkin since then.

¶ 13        Larkin testified that when respondent was out of prison, he had visits one time per week for most of the day. After respondent failed to show up for substance abuse treatment, respondent's visits were switched to supervised visits at DCFS. Larkin explained that during home visits, respondent frequently was not in the same room as K.S.; K.S. spent most of the time with

his grandfather. Respondent stopped attending visits when they were moved to DCFS. Larkin reported that respondent had last visited K.S. on February 16, 2019.

¶ 14    On cross-examination, Larkin acknowledged that respondent maintained regular contact with her and an interest in K.S. while incarcerated. Larkin further acknowledged that respondent informed her that he struggled to attend drug treatment because it conflicted with his work schedule. Larkin stated that respondent completed services while he was incarcerated. Larkin further stated respondent attended 14 out of 43 scheduled visits.

¶ 15    Respondent did not present any evidence.

¶ 16    The trial court found that the State had proved all three allegations of unfitness listed in the petition—that is, that respondent (1) failed to maintain a reasonable degree of interest, (2) failed to make reasonable efforts, and (3) failed to make reasonable progress—by clear and convincing evidence. The court noted that respondent "was incarcerated during the entirety of the designated period and *** was unable to make reasonable progress and reasonable efforts *** because of the incarceration, which was the result of his voluntary acts." The court further noted that when respondent was released, he failed to comply with outpatient treatment, appear for drug tests, and attended just 14 visits before getting arrested. Accordingly, the court found respondent was an unfit parent.

¶ 17    2. *The Best-Interests Proceedings*

¶ 18    Immediately following the fitness proceedings, the trial court conducted a hearing regarding whether it was in K.S.'s best interests to terminate respondent's parental rights. Larkin testified that K.S. had been in the same foster home for the life of the case, about three of the five years K.S. had been alive. K.S. was very bonded with the foster family, including his biological siblings in that placement and the other children in the home. Larkin further stated that the foster

family supported K.S., provided for all his needs, and was willing to provide permanency through adoption. Larkin noted that the foster family had recently moved into a larger home to better provide for the family and K.S. was developing ties to the community. K.S. also expressed a desire to remain in the current placement. Larkin believed that K.S. had not formed a bond with respondent and was supportive of K.S.'s adoption.

¶ 19 Respondent did not present any evidence.

¶ 20 The trial court, after listing and considering all of the statutory factors, found that it was in K.S.'s best interests to terminate respondent's parental rights. The court emphasized that K.S. was very bonded to his foster family and siblings within the home and had no bond with respondent. Further, K.S. expressed a desire to stay in the home and the foster parents were willing to provide stability and permanency. As a result, the court found it was in K.S.'s best interests to terminate respondent's parental rights.

¶ 21 This appeal followed.

¶ 22 II. ANALYSIS

¶ 23 Respondent appeals, arguing that the trial court's (1) fitness determination and (2) best-interest determination were against the manifest weight of the evidence. We disagree and affirm the trial court's judgment.

¶ 24 A. The Fitness Determination

¶ 25 Respondent argues the trial court's findings that the State proved all three grounds of unfitness by clear and convincing evidence were against the manifest weight of the evidence. It is well settled that "[a]s the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493, 797 N.E.2d 1112, 1120 (2003). Based on

our review of the record, we conclude that the trial court's finding that respondent failed to make reasonable progress within the applicable nine-month period was not against the manifest weight of the evidence. Accordingly, we discuss only that finding.

¶ 26                                    1. *The Standard of Review*

¶ 27         A determination of parental unfitness involves factual findings and credibility determinations that the trial court is in the best position to make. *In re Richard H.*, 376 Ill. App. 3d 162, 165, 875 N.E.2d 1198, 1201 (2007). A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d 405, 417, 752 N.E.2d 1112, 1119 (2001). A decision is against the manifest weight of the evidence when the opposite conclusion is clearly the proper result. *In re Nylani M.*, 2016 IL App (1st) 152262, ¶ 48, 51 N.E.3d 1067.

¶ 28                                    2. *Reasonable Progress*

¶ 29         The State must prove unfitness as defined in section 1(D) of the Adoption Act by clear and convincing evidence. 750 ILCS 50/1(D) (West 2016); see also *D.D.*, 196 Ill. 2d at 417. Section 1(D)(m)(ii) of the Adoption Act defines an unfit person as a parent who fails to make "reasonable progress toward the return of the child" during any nine-month period following an adjudication of neglect or abuse. 750 ILCS 50/1(D)(m)(ii) (West 2016). The Illinois Supreme Court has held that "the benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child ***." *In re C.N.*, 196 Ill. 2d 181, 216-17, 752 N.E.2d 1030, 1050 (2001); see also *In re D.T.*, 2017 IL App (3d) 170120, ¶ 17, 83 N.E.3d 485. Likewise, this court has defined "reasonable progress" as follows:

" 'Reasonable progress' is an objective standard which exists when the court, based on the evidence before it, can conclude that the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future,* will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991).

¶ 30                              3. *The Trial Court's Finding in This Case*

¶ 31            Here, the State presented evidence that respondent was incarcerated for the vast majority of the case. Although respondent maintained interest and engaged in services while incarcerated, respondent failed to engage in substance abuse treatment and stopped appearing for drug tests after he was released. Indeed, respondent was arrested for possession of methamphetamine in March 2019. Further, respondent had just 14 visits with K.S. during the life of the case, and Larkin explained that respondent was often not even in the same room with K.S. during those visits. Instead, K.S. spent his time with his grandfather. In addition, Larkin stated that respondent had bonded out in September 2019, but she could not set up visits because she could not contact respondent. Accordingly, we conclude the trial court's determination that respondent failed to make reasonable progress toward the return of K.S. was not against the manifest weight of the evidence.

¶ 32                              B. The Best-Interest Determination

¶ 33                              1. *The Applicable Law and Standard of Review*

¶ 34       At the best-interest stage of a termination proceeding, the State bears the burden

of proving by a preponderance of the evidence that termination of parental rights is in the child's

best interest. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 290-91 (2009). In

reaching a best-interest determination, the trial court must consider, within the context of the

child's age and developmental needs, the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's
>
> identity; (3) the child's familial, cultural[,] and religious background and ties;
>
> (4) the child's sense of attachments, including love, security, familiarity, continu-
>
> ity of affection, and the least disruptive placement alternative; (5) the child's
>
> wishes and long-term goals; (6) the child's community ties; (7) the child's need
>
> for permanence, including the need for stability and continuity of relationships
>
> with parent figures and siblings; (8) the uniqueness of every family and child;
>
> (9) the risks related to substitute care; and (10) the preferences of the person avail-
>
> able to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859
>
> N.E.2d 123, 141 (2006); see also 705 ILCS 405/1-3(4.05) (West 2016).

¶ 35       A reviewing court affords great deference to a trial court's best-interest finding

because the trial court is in the superior position to view the witnesses and judge their credibility.

*Jay. H.*, 395 Ill. App. 3d at 1070. An appellate court "will not reverse the trial court's best-inter-

est determination unless it was against the manifest weight of the evidence." *Id.* at 1071. A best-

interest determination is against the manifest weight of the evidence only if the facts clearly

demonstrate that the trial court should have reached the opposite result. *Id.*

¶ 36                                   2. *This Case*

¶ 37       The trial court emphasized that K.S. (1) was very bonded with his foster parents

and siblings, (2) had expressed a desire to remain in the foster placement, and (3) was able to receive stability and permanence in the foster home because the foster parents were willing to adopt. Additionally, K.S. was doing well in the home and had established ties to the community. The foster parents were able to meet all K.S.'s needs and had even moved into a larger home to better accommodate the family. Further, K.S. had spent the entirety of the case in the same foster placement—three of the five years he had been alive—and had seen respondent just 14 times in that same time period. Indeed, the court noted that K.S. did not have a bond with respondent at all. Accordingly, we conclude the trial court's finding that it was in K.S.'s best interest to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 38                                III. CONCLUSION

¶ 39          For the reasons stated, we affirm the trial court's judgment.

¶ 40          Affirmed.