NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220695-U

NO. 4-22-0695

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* H.S., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McDonough County |
| Petitioner-Appellee, | ) | No. 21JA9 |
| v. | ) | |
| Erin W., | ) | Honorable |
| Respondent-Appellant). | ) | Heidi A. Benson, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's judgment finding respondent unfit under section 1(D)(m)(ii) of
the Adoption Act was not against the manifest weight of the evidence.

¶ 2    Respondent Erin W. appeals from the trial court's order finding her to be an unfit

parent and terminating her parental rights as to her minor child H.S. (born in 2020). Respondent

only challenges the trial court's unfitness finding on appeal, arguing the judgment is against the

manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                          I. BACKGROUND

¶ 4    In February 2020, the State filed a petition for adjudication of wardship, alleging

the minor was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (705 ILCS

405/2-3(1)(b) (West 2020)).[1] Relevant on appeal, the petition alleges that the minor was subject to an injurious environment due to respondent (1) previously being found unfit without fitness being restored and (2) suffering from unaddressed mental health issues impacting her ability to care for the minor. Respondent stipulated to the petition and H.S. was adjudicated neglected in September 2020. H.S. was made a ward of the court following a dispositional hearing where the court found respondent unfit.

¶ 5       Among the services respondent was to complete under the dispositional order were the following: (1) execute all authorizations required, (2) notify the caseworker of changes in contact information or residence, (3) obtain and maintain employment, (4) obtain and maintain safe and suitable housing, (5) submit to a psychological evaluation and follow all recommendations, (6) participate in and complete counseling, (7) complete a parenting class, (8) complete domestic violence counseling, and (9) complete two drug drops per month.

¶ 6       The State filed a petition to terminate respondent's parental rights in January 2022, alleging she was an unfit person pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)) for failing to make reasonable progress toward the return of the minor during the relevant nine-month period of April 1, 2021, through January 1, 2022.

¶ 7       A fitness hearing followed in May 2022. Maria Leitner of FamilyCore was the caseworker in this matter. She testified that the primary reason for removal of the minor was respondent's mental health issues. While respondent began attending counseling services, she was discharged twice for a lack of engagement. A psychological evaluation had been scheduled, but

---

[1] The minor's biological father Terry B. was involved in these proceedings. The trial court's judgments regarding unfitness and the best interest of the minor applied with equal force to Terry B. He is pursuing an appeal separately in Fourth District case No. 4-22-0780.

respondent failed to appear. Leitner attempted to reschedule the evaluation. However, scheduling was complicated by respondent's incarceration.

¶ 8        The secondary reason for the minor's removal was environmental concerns. Respondent moved from a previous residence known to be unsuitable for the minor. Leitner attempted to but was unable to visit respondent's new residence. She would schedule inspections, but respondent would cancel, claiming she would not be home or had another appointment. While there was no express reason given why Leitner could not observe the home, it was insinuated that the home was not appropriate for the minor. There were also reports there were a significant number of animals living in the home.

¶ 9        Respondent was initially required to participate in twice-monthly drug drops. She was then only required to drop once a month. Respondent only appeared for about half of the required drug drops, with no reason provided for the absences. Of the samples submitted, there were no unexplained substances found.

¶ 10       During the relevant period, respondent successfully completed domestic violence counseling and signed consents. She completed a parenting class prior to the relevant period. Although respondent completed the parenting class, there were concerns that she did not retain the information presented in the class as she did not understand the appropriate timeline in which the minor should be developing. She was sporadically employed but was unemployed at the time of the hearing. H.S. was respondent's ninth child, and none of the other children were under her care due to her surrendering the children or her rights to them being terminated. Leitner concluded that on January 1, 2022, the agency was no closer to returning the minor to respondent's care than it was on April 1, 2021. Respondent did not testify.

¶ 11 Terry B. testified in his defense. He acknowledged that the home that he and respondent originally resided in was unsafe for the minor, but he had been working towards fixing the issues with the new residence. As of the hearing, he was still making repairs.

¶ 12 The trial court entered an order finding respondent unfit. In delivering its judgment, the court noted the most significant concerns were respondent's mental health issues, the environmental issues, and that Leitner was unable to observe the home. A best interest hearing ensued, and thereafter the trial court found it was in the best interest of the minor to terminate respondent's parental rights.

¶ 13 This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15 Respondent argues that the trial court's fitness determination was against the manifest weight of the evidence. She argues that she made significant reasonable progress during the relevant time period. The State counters that although respondent made some progress, the progress was insufficient to determine that the minor could be returned to her care in the near future.

¶ 16 The termination of parental rights is a two-step process. Here, respondent only challenges the finding in the first step, that she was unfit. "Under the Juvenile Court Act, parental rights cannot be terminated absent the parent's consent unless the court first determines, by clear and convincing evidence, that the parent is an 'unfit person' as defined by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2010)). 705 ILCS 405/2-29(2) (West 2010)." *In re N.G.*, 2018 IL 121939, ¶ 28. "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). A trial court's finding of unfitness will not be overturned on appeal unless it is against the

manifest weight of the evidence. *In re M.I.*, 2016 IL 120232, ¶ 21. " 'A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent.' " *Id.* (quoting *Gwynne P.*, 215 Ill. 2d at 354).

¶ 17         The court in this case found that respondent failed to make reasonable progress toward the return of the minor during the nine-month period pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1 (D)(m)(ii) (West 2020)).

> "Reasonable progress is examined under an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent. [Citation]. The benchmark for measuring a parent's reasonable progress under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and court's directives in light of the condition that gave rise to the removal of the child and other conditions which later become known that would prevent the court from returning custody of the child to the parent. [Citation]. Reasonable progress exists when the trial court can conclude that progress being made by a parent to comply with directives given for the return of the minor is sufficiently demonstrable and of such a quality that the trial court will be able to order the minor returned to parental custody in the near future." *In re D.T.*, 2017 IL App (3d) 170120, ¶ 17.

¶ 18         The trial court's fitness finding in this matter is not against the manifest weight of the evidence. Respondent argues that she made reasonable progress because she changed residences in an attempt to remedy the environmental concerns. She also argues the trial court placed an undue emphasis on the missed drug drops. We disagree. Initially, while the trial court

did state that it could not ignore the missed drug drops, it is apparent from the record that the trial court's focus remained on two issues: respondent's unaddressed mental health issues and the condition of respondent's home. More than two years after the minor was removed from respondent's care neither of those issue had been addressed. As the trial court pointed out, the predominant concern for the minor was respondent's mental health. None of the services meant to address that issue were completed. Respondent failed to complete her psychological examination and was discharged from counseling twice for a lack of engagement. The secondary concern was the condition of respondent's home. While respondent did move, the caseworker in this matter was unable to observe the home to determine whether it was suitable for the minor despite her repeated attempts to do so. Testimony during the hearing confirmed the caseworker's suspicions that the reason she was not allowed to view the home was because it was not suitable for the minor.

¶ 19        Respondent argues that the trial court "completely overlooked the meaningful progress [she] made in responding to her child's needs." We reject this contention, as the court specifically stated:

> "One of the parents' attorneys, perhaps it was Mr. Thor, indicated that [respondents] tried. The Court agrees; they tried, but trying is efforts, and the petition was filed on progress, not efforts.
>
> Specifically with regard to mother, *** the most significant concerns were mother's mental health and the environmental issues. With regard to the two services aimed at mental health, counseling and the psychological, mother just abjectly failed at those. ***
>
> ***

"With regard to letting [the] social worker into the home, there's really—hundred percent of the evidence is social worker never got to be in the home during the nine-month period that we're here in court on. And [Terry B.] testified as to why that was, and it appears that there were some pretty significant environmental concerns with regard to the housing situation at that time."

¶ 20 Based on the conditions that resulted in the removal of the minor from respondent's care, and the failure to comply with the court's directives meant to remedy those conditions, the court did not err in finding there was no reasonable progress towards the return of the minor to respondent's care in the near future.

¶ 21 III. CONCLUSION

¶ 22 For the reasons stated, we affirm the judgment of the trial court of McDonough County.

¶ 23 Affirmed.