NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220780-U

NO. 4-22-0780

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 31, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* H.S., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McDonough County |
| Petitioner-Appellee, | ) | No. 21JA9 |
| v. | ) | |
| Terry B., | ) | Honorable |
| Respondent-Appellant). | ) | Heidi A. Benson, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's judgment finding respondent unfit and terminating his parental rights was not against the manifest weight of the evidence.

¶ 2   Respondent Terry B. appeals from the trial court's order finding him to be an unfit parent and terminating his parental rights as to the minor child H.S. (born in 2020). Respondent only challenges the trial court's unfitness finding on appeal, arguing the judgment is against the manifest weight of the evidence. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4   In February 2020, the State filed a petition for adjudication of wardship, alleging the minor was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)). Respondent stipulated to the petition and H.S.

was adjudicated neglected in September 2020. H.S. was made a ward of the court following a dispositional hearing, where the court found respondent unfit. The minor's biological mother, Erin W., was involved in these proceedings. The trial court's judgments regarding unfitness and the best interest of the minor applied with equal force to Erin W. She separately pursued an appeal in *In re H.S.*, 2022 IL App (4th) 220695-U, where we affirmed the trial court's judgment. *Id.* ¶ 22.

¶ 5        Among the services respondent was to complete under the dispositional order were the following: (1) execute all authorizations required; (2) notify the caseworker of changes in contact information or residence; (3) obtain and maintain safe and suitable housing that was clean and sanitary; (4) visit the minor and demonstrate appropriate parenting conduct; (5) complete a sex offender evaluation and follow all recommendations; (6) participate in and complete counseling to address past trauma; (7) complete domestic violence counseling; (8) complete a parenting class; and (9) complete two drug drops per month.

¶ 6        The State filed a petition to terminate respondent's parental rights in January 2022, alleging he was an unfit person pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)) for failing to make reasonable progress toward the return of the minor during the relevant nine-month period of April 1, 2021, through January 1, 2022.

¶ 7        A fitness hearing followed in May 2022. Maria Leitner of FamilyCore was the caseworker in this matter. She testified that the primary reason for removal of the minor was Erin W.'s mental health issues. Erin W. was not completing services and was incarcerated at a time outside of the relevant time period.

¶ 8        The secondary reason for the minor's removal was environmental concerns. Respondent and Erin W. moved from a previous residence known to be unsuitable for the minor. That residence did not have drywall, and there were also chickens and "lots of other animals"

living in the home. Leitner attempted but was unable to visit respondent's new residence. She would schedule inspections, but Erin W. would cancel the appointments, claiming she would not be home or had another appointment. There were also reports that there were significant numbers of animals living in the home. Erin W. and respondent moved to Manito, Illinois. They were residing together since the beginning of the matter and at the time of the hearing. Leitner was not allowed to observe the home in Manito during the relevant time period despite her attempts to do so. No explicit reason was given why she could not visit the home, but it was "insinuated" the home was not appropriate for the minor.

¶ 9        Respondent was required to participate in twice-monthly drug drops. During these proceedings, the frequency was reduced to once monthly. Respondent and Erin W. had drops on the same day, "So if she missed, he missed." He only appeared for about half of the required drug drops. Respondent claimed the absences were a result of his conflicting work schedule. Leitner explained to respondent that missed tests resulted in a presumed positive. Leitner attempted to accommodate respondent by moving the location of the drug drops and by rescheduling them to coincide with court dates, to no avail.

¶ 10        During the relevant period, respondent successfully completed counseling, a sex offender assessment with no recommended follow-up treatment, and domestic violence counseling, and he also signed consents. The sex offender assessment was entered into evidence. The assessment noted that the evaluator did not mandate respondent to participate in sex offender treatment but included a list of concerns in the conclusion section of the report regarding scenarios that could elevate recidivism. Among the scenarios that could increase the chances of respondent reoffending were substance abuse and not participating in or completing a sex offender treatment program. The assessment found "little reason to believe that he poses a sexual risk to [H.S.]"

Leitner was aware of the nature of respondent's previous sex offense, as it involved a minor under the age of seven. Respondent did not engage in further sex offender treatment.

¶ 11    Respondent was employed throughout the period and completed a parenting class prior to the relevant time frame. Although respondent completed the parenting class, there were concerns that he did not retain the information presented in the class as he did not understand the appropriate timeline in which the minor should be developing. Respondent also did not change diapers at visitations and refused to do so. Erin W. and respondent explained "it was because of [his] sex offender status." Another time respondent said it was because "he just didn't do it." Leitner concluded that on January 1, 2022, the agency was no closer to returning the minor to respondent's care than it was on April 1, 2021.

¶ 12    Respondent testified in his defense. He acknowledged that the home he and Erin W. originally resided in was unsafe for the minor, but he had been working towards fixing the issues with the new residence. As of the hearing, he was still making repairs. In discussing the repairs to the home in Manito, respondent testified that he had to replace portions of flooring, put down new carpet, fix holes in walls, put a new toilet in, and repair plumbing throughout. The home had a gas furnace, but it did not work. The home was heated with "electric heaters." Respondent had three dogs living in the home and four or five cats that were mostly "outside animals." Respondent claimed that Leitner had been inside the Manito residence during the relevant time period but could not remember when.

¶ 13    The trial court entered an order finding respondent unfit. In delivering its judgment, the court noted the most significant concerns were Erin W.'s mental health issues, the environmental issues, and that Leitner was unable to observe the home. A best-interest hearing

ensued, and thereafter the trial court found it was in the best interest of the minor to terminate respondent's parental rights.

¶ 14    This appeal followed.

¶ 15                            II. ANALYSIS

¶ 16    Respondent argues that the trial court's fitness determination was against the manifest weight of the evidence. He argues that he made reasonable progress during the relevant time period. The State counters that although respondent made some progress, the progress was insufficient to show that the minor could be returned to his care in the near future.

¶ 17    Section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)) provides for a two-step process to involuntarily terminate parental rights. The State must first prove by clear and convincing evidence that the respondent is "unfit" as contemplated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re N.G.*, 2018 IL 121939, ¶ 28. "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). A trial court's finding of unfitness will not be overturned on appeal unless it is against the manifest weight of the evidence. *In re M.I.*, 2016 IL 120232, ¶ 21. " 'A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent.' " *Id.* (quoting *Gwynne P.*, 215 Ill. 2d at 354).

¶ 18    The court in this case found that respondent failed to make reasonable progress toward the return of the minor during the relevant nine-month period pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1 (D)(m)(ii) (West 2020)).

> "Reasonable progress is examined under an objective standard based upon
> the amount of progress measured from the conditions existing at the time

custody was taken from the parent. [Citation]. The benchmark for measuring a parent's reasonable progress under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and court's directives in light of the condition that gave rise to the removal of the child and other conditions which later become known that would prevent the court from returning custody of the child to the parent. [Citation]. Reasonable progress exists when the trial court can conclude that progress being made by a parent to comply with directives given for the return of the minor is sufficiently demonstrable and of such a quality that the trial court will be able to order the minor returned to parental custody in the near future." *In re D.T.*, 2017 IL App (3d) 170120, ¶ 17.

¶ 19    Respondent argues that he made reasonable progress towards remedying the environmental concerns because he changed residences during the relevant period. He also argues the trial court placed an undue emphasis on his missed drug drops, as the missed tests are a "red herring" where substance abuse was not the reason H.S. was removed from his care. Further, he takes issue with the trial court giving any weight to his reluctance to change the minor's diapers.

¶ 20    In determining respondent was unfit, the trial court found:

"One of the parents' attorneys, perhaps it was Mr. Thor, indicated that [respondents] tried. The Court agrees; they tried, but trying is efforts, and the petition was filed on progress, not efforts.

Specifically with regard to mother, *** the most significant concerns were mother's mental health and the environmental issues. With

- 6 -

regard to the two services aimed at mental health, counseling and the psychological, mother just abjectly failed at those. ***

    ***

With regard to letting [the] social worker into the home, there's really—hundred percent of the evidence is social worker never got to be in the home during the nine-month period that we're here in court on. And [Terry B.] testified as to why that was, and it appears that there were some pretty significant environmental concerns with regard to the housing situation at that time. And, again, [Terry B.] definitely made efforts to rectify the situation, but in the nine-month period that we are concerned with, the situation was not rectified and even by [Terry B.'s] testimony, the situation was not rectified. And the social worker certainly was not allowed in either home, Manito or Havana.

With regard to visitation, the parents definitely made excellent efforts to keep up with the visitation. The Court's concern with regard to visitation is that we have one parent who is refusing to do a pretty foundational, basic caretaking task of a young child, which is a diaper change, which then begs—because of his sex offender status, which then begs the question, first of all, how would he be able to take care of a young child with a very significant genetic disorder? Number two: Would he be able to do any bathing tasks? So that is very concerning.

With regard to father specifically, the Court finds that he did complete his counseling. He did complete his parenting class; although,

completing the parenting class and implementing what you've learned are two different things. And the Court, again, would identify that having one parent refuse all toileting help is not a successful implementation of parenting.

With regard to the sex offender assessment, the Court would note that the assessment did not recommend treatment, but did indicate that there might—may be concerns with regard to the propensity for re-offense if father had a substance abuse issue. Well, we don't know if father has a substance abuse issue because we only have 50 percent of the data.

So on the whole, the Court finds that we do not have progress towards reunification in the nine-month period of April 1st, 2021 through January 1st of 2022 and that the State has proven that by clear and convincing evidence."

¶ 21 The trial court focused on two issues in making its finding of unfitness: Erin W.'s unaddressed mental health issues and the condition of respondent's home. More than two years after the minor was removed from respondent's care, neither of those issues had been addressed. While respondent did move, the caseworker in this matter was unable to observe the home to determine whether it was suitable for the minor despite her repeated attempts to do so. Testimony during the hearing confirmed the caseworker's suspicions that the reason she was not allowed to view the home was because it was not suitable for the minor. As of the fitness hearing, repairs to the home had not been completed, and heat in the home was provided by "electric heaters." The environmental concerns that resulted in the removal of the minor from respondent's care were not remediated.

¶ 22　　　　Further, despite completing the parenting class, respondent was unaware of the appropriate timeline in which the minor should be developing and would not change H.S.'s diapers at visits, raising concerns whether he would be able to care for the minor on his own. As the court pointed out, respondent was not implementing what was learned in the parenting class. Moreover, respondent was not complying with a court order requiring drug screens. One of the scenarios outlined in the sex offender assessment that could elevate respondent's chances of recidivism was a substance abuse issue. The court opined that respondent's lack of compliance with the screenings made it impossible to eliminate this consideration "because we only have 50 percent of the data."

¶ 23　　　　Respondent points to his completion of services and notes from Leitner in the case file that he was making progress as requiring reversal. We disagree. As the State points out, reasonable efforts is not the same as demonstrable movement towards the return of the minor in the near future. Based on the conditions that resulted in the removal of the minor from respondent's care, and conditions that later became known to the court that would prevent returning custody to respondent, the court did not err in finding there was no reasonable progress towards the return of the minor to respondent's care in the near future.

¶ 24　　　　　　　　　　　　　III. CONCLUSION

¶ 25　　　　For the reasons stated, we affirm the judgment of the trial court.

¶ 26　　　　Affirmed.