NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250990-U

NO. 4-25-0990

IN THE APPELLATE COURT

FILED
January 22, 2026
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* R.T.-G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Rock Island County |
| Petitioner-Appellee, | ) | No. 23JA70 |
| v. | ) | |
| Ray G., | ) | Honorable |
| Respondent-Appellant). | ) | Norma Kauzlarich, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Zenoff and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: There being no nonfrivolous argument to be raised on appeal, appellate counsel's
motion to withdraw is granted, and the trial court's judgment terminating
respondent's parental rights is affirmed.

¶ 2    In March 2025, the State filed a petition to terminate the parental rights of

respondent Ray G. as to his minor child, R.T.-G. (born 2022). R.T.-G.'s mother is not a party to

this appeal. In September 2025, the trial court granted the State's petition and terminated

respondent's parental rights.

¶ 3    Respondent appealed and counsel was appointed to represent him. Appointed

counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing

respondent's appeal presents no issues of arguable merit for review. See *In re S.M.*, 314 Ill. App.

3d 682, 685-86 (2000) (holding *Anders* applies to termination of parental rights cases and

providing the proper procedure to be followed by appellate counsel). We agree, grant appellate

counsel's motion to withdraw, and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5                           A. Adjudication of Wardship

¶ 6         In July 2023, the State filed a petition to adjudicate R.T.-G. neglected. While the petition contained specific factual allegations, the general theme was that R.T.-G. was subjected to an injurious environment under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The trial court placed the child in temporary custody and appointed the Illinois Department of Children and Family Services (DCFS) as guardian. R.T.-G. was placed with his maternal grandmother.

¶ 7         At a subsequent hearing in September 2023, the parties discussed compliance with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. §§ 1901-1923 (2018)). The mother of R.T.-G. was a member of the Pokagon Band of the Potawatomi Indian tribe (Pokagon Band), so by effect so was R.T.-G. The Pokagon Band appeared at the hearing via a representative. The State asserted it wanted to file a supplemental motion to ensure compliance with the ICWA. The trial court also noted that newly appointed counsel for respondent had moved for a continuance. All the parties agreed that a continuance was appropriate, and the court found good cause to continue the matter.

¶ 8         Respondent subsequently filed a motion for discovery. At the following hearing on September 8, 2023, the matter was once again continued. There is no report of proceedings in the record for this hearing, but a docket entry shows that counsel for respondent requested a continuance and none of the parties objected. The trial court found that upon good cause shown, the matter would be continued.

¶ 9         On September 18, 2023, the State filed a supplemental petition. At a hearing the

same day, expert testimony was given on the child-rearing practices of the Pokagon Band. Additional testimony was given concerning the appropriateness of the placement of R.T.-G. with his grandmother. The trial court ordered that placement with R.T.-G.'s grandmother would continue, a decision with which the representative for the Pokagon Band agreed.

¶ 10 The matter was continued to October 12, 2023, and then again to November 16, 2023, without objection. At the November hearing, R.T.-G.'s mother stipulated to the petition, and no objection was raised by the Pokagon Band. On December 11, 2023, the trial court entered an adjudicatory order finding R.T.-G. neglected and a dispositional order finding respondent unfit.

¶ 11 Subsequently, the Pokagon Band exercised its right to intervene in the matter. In August 2024, respondent was incarcerated in a county jail in Iowa, so he was unable to complete services or visit R.T.-G. Respondent was subsequently moved to Anamosa State Penitentiary in Iowa and had other pending criminal charges in Rock Island County.

¶ 12 B. Petition to Terminate Parental Rights

¶ 13 In March 2025, the State filed a petition to terminate respondent's parental rights, alleging that he was unfit under sections 1(D)(b), (m)(i), and (m)(ii) of the Adoption Act (750 ILCS 50/1(D)(b), (m)(i), (m)(ii) (West 2024)) based on a failure to (1) maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare; (2) make reasonable efforts to correct the conditions that were the basis for the removal of the child during a nine-month period after the adjudication of neglect; and (3) make reasonable progress toward the return of the child to his care during a nine-month period after the adjudication of neglect. The petition alleged a nine-month period of December 12, 2023, to September 12, 2024.

¶ 14 1. *Fitness Hearing*

¶ 15 In August 2025, the trial court held a fitness hearing. Exhibits, including agency

reports and birth certificates for the mother and R.T.-G. establishing tribal membership, were submitted into evidence. An expert in the child-rearing practices of the Pokagon Band testified to her opinion that R.T.-G. had not been raised consistently with tribal practices. A caseworker also testified regarding respondent and his service plan. While respondent had engaged in some services, he failed to complete any. Respondent's visitation with the minor became inconsistent in January 2024 before ceasing completely that same month. Respondent's tentative discharge date from the Iowa prison was set for 2031. Respondent had not reached out to the caseworker despite having her contact information and the ability to do so and had failed to reach out to the child.

¶ 16        The trial court found that the State proved respondent unfit by clear and convincing evidence based on, among other grounds, his failure to make reasonable progress toward the return of the child to his care during a nine-month period after the adjudication of neglect.

¶ 17                            2. *Best-Interest Hearing*

¶ 18        In September 2025, the trial court proceeded to a best-interest hearing. The court took judicial notice of the best-interest report without objection. The report stated that R.T.-G. was bonded with his maternal grandmother and that he had been in the placement for essentially his entire life. All of R.T.-G.'s needs were being met in his placement. Everything R.T.-G. knew or relied on in relation to the statutory best-interest factors favored termination. The grandmother involved R.T.-G. in tribal culture and attended tribal events with all the children in her care. The caseworker briefly testified that R.T.-G. was placed with his maternal grandmother and his older half-siblings. The grandmother wished to give R.T.-G. permanence through adoption. Counsel for the Pokagon Band did not object to the termination of respondent's parental rights.

¶ 19        The trial court found the State proved by a preponderance of the evidence that it was in R.T.-G.'s best interest to terminate respondent's parental rights. The court enumerated the

statutory best-interest factors and found that they supported termination. The court therefore ordered that respondent's parental rights were terminated, and it set the permanency goal for R.T.-G. to adoption.

¶ 20        This appeal followed.

¶ 21                            II. ANALYSIS

¶ 22        Appellate counsel now moves to withdraw on appeal pursuant to *Anders* and argues that the appeal of this case presents no potentially meritorious issues for review. See *S.M.*, 314 Ill. App. 3d at 685-86. Notice of counsel's intent to withdraw was sent to respondent, and he has not filed a response. Counsel states she has reviewed the common law record and report of proceedings for this matter and has identified four potential issues for review: (1) timeliness of the adjudicatory hearing; (2) whether incarceration tolls the time to comply with the service plan; (3) compliance with the ICWA; and (4) whether the findings of the trial court at the fitness and best-interest hearings were against the manifest weight of the evidence.

¶ 23                    A. Timeliness of Adjudicatory Hearing

¶ 24        Appellate counsel acknowledges that the trial court failed to conduct the adjudicatory hearing within 90 days. The Juvenile Court Act requires that "an adjudicatory hearing shall be commenced within 90 days of the date of service of process upon the minor, parents, any guardian and any legal custodian, unless an earlier date is required pursuant to Section 2-13.1." 705 ILCS 405/2-14(b) (West 2024). However, "[t]he time limits of this Section may be waived only by consent of all parties and approval by the court." *Id.* § 2-14(d). If the time limits of the statute are not met, "upon motion by any party the petition shall be dismissed without prejudice." *Id.* § 2-14(c).

¶ 25        Counsel asserts that the delay of 112 days between the July 27, 2023, grant of

temporary custody and the November 16, 2023, adjudicatory hearing was beyond that allowed by statute. However, we agree with counsel that this does not form a basis for reversal where the parties agreed to every continuance and the trial court found that there was good cause shown at the two hearings in September 2023. Furthermore, there was no motion filed by any party to dismiss the action based on procedural noncompliance. See *In re S.G.*, 175 Ill. 2d 471, 481-82 (1997). The plain language of the statute requires the filing of a motion in order to dismiss the petition for procedural noncompliance by the State. See *Rainey v. Retirement Board Of the Policemen's Annuity & Benefit Fund of the City of Chicago*, 2025 IL 131305, ¶ 12 ("A statute's plain language is the best indicator of legislative intent, and where the statute's language is clear, we apply it as written."). We agree with counsel that, based on the plain language of the statute and the agreement by the parties to continue the matter without objection, there is no nonfrivolous argument to be advanced on this point.

¶ 26                                    B. Incarceration and Progress on Service Plan

¶ 27            Counsel notes that she considered the argument that respondent's incarceration and resulting inability to perform services provided a sufficient basis to undermine the trial court's fitness finding. However, it is well established that "[t]ime in prison is included in the nine-month period during which reasonable progress must be made." *In re F.P.*, 2014 IL App (4th) 140360, ¶ 89 (citing *In re J.L.*, 236 Ill. 2d 329, 343 (2010)). In other words, incarceration does not toll the requirement of reasonable progress toward the goals of the service plan. To that end, the fact that personal circumstances, such as incarceration, inhibit reasonable progress is irrelevant to the " 'objective standard' " of determining reasonable progress when making a fitness determination. *Id.* (quoting *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991)). Accordingly, there is no nonfrivolous argument that could be made regarding respondent's incarceration and its impact

on his ability to complete services.

¶ 28                                    C. Compliance with the ICWA

¶ 29          Counsel asserts she considered arguing that the State failed to comply with the ICWA. "The ICWA sets forth minimum federal standards for the removal of an Indian child from his or her family." *In re C.N.*, 196 Ill. 2d 181, 203 (2001). Jurisdictional provisions concerning Indian child custody proceedings are at the heart of the ICWA. *In re H.D.*, 343 Ill. App. 3d 483, 487-88 (2003). "Under section 1911(b) [of the ICWA], the state courts and the tribal courts enjoy concurrent jurisdiction over proceedings for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe." *C.N.*, 196 Ill. 2d at 203-04 (citing 25 U.S.C. § 1911(b) (1994)). Further,

> "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe *** of the pending proceedings and of their right of intervention." 25 U.S.C. § 1912(a) (2018).

"A violation of sections 1911 or 1912 of the ICWA may be cause to invalidate the child custody proceeding." *C.N.*, 196 Ill. 2d at 204 (citing 25 U.S.C. § 1914 (1994)).

¶ 30          We agree with counsel that there is no nonfrivolous argument that could be advanced that the ICWA was violated. It is clear from the report of proceedings that the State and the trial court were cognizant of the ICWA and R.T.-G.'s status early on in the proceedings. The Pokagon Band was represented throughout the proceedings, and the State repeatedly requested the enhanced findings required by the ICWA. The service plans and findings of the court documented the active efforts of the agencies. See 25 U.S.C. § 1912(d) (2018); 25 C.F.R. § 23.120 (2023).

Tribal counsel participated in this case and did not raise any objections to the procedure or ruling of the court.

¶ 31                    D. Fitness and Best-Interest Determinations

¶ 32        Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2022)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as defined in the Adoption Act. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the children. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004). A trial court's fitness and best-interest findings will not be reversed unless they are against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29; *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 33        Among the grounds of unfitness, the trial court found respondent failed to make reasonable progress toward the return of the child during the relevant nine-month period. See 750 ILCS 50/1(D)(m)(ii) (West 2024); see also *In re D.C.*, 209 Ill. 2d 287, 296 (2004) ("A parent's rights may be terminated if a single alleged ground for unfitness is supported by clear and convincing evidence."). Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). Reasonable progress is an objective standard (*In re A.R.*, 2023 IL App (1st) 220700, ¶ 70), and it exists when the trial court can conclude that a parent is making sufficient progress under the service plan that the minor will be "returned to parental custody in the near future" (*In re D.T.*, 2017 IL App (3d) 170120, ¶ 17).

¶ 34        Here, the evidence established that respondent failed to complete any of the required services. As discussed above, respondent's incarceration offers no respite from the trial

court's finding. From an objective view, respondent failed to make reasonable progress during the nine-month period because R.T.-G. could not be returned to him in the near future. It appears from the record that respondent ceased contact with R.T.-G. in January 2024 and had not reestablished communication as of the time of the hearing. We agree with appellate counsel that there is no nonfrivolous argument that can be asserted challenging the court's fitness finding.

¶ 35 Turning to the best-interest determination, the trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 36 The best-interest report establishes that R.T.-G. had been with his maternal grandmother almost his entire life. His background, including familial, cultural, religious, and community ties, was connected to his current placement. The grandmother involved R.T.-G. in tribal rituals and activities, and he was bonded with her and his half-siblings, who also resided with the grandmother. His sense of attachments, including love, security, familiarity, and

continuity of affection, was also with his grandmother. R.T.-G.'s grandmother provided for all of his needs, was the least disruptive placement, and wished to give him permanence through adoption.

¶ 37 Respondent was incarcerated, and estimates were that he would remain so until at least 2031. He failed to maintain his connection with the child and had no way to provide for the child's needs or offer shelter.

¶ 38 Given the facts of this case, it would be frivolous to argue that the trial court's fitness and best-interest findings were against the manifest weight of the evidence.

¶ 39 III. CONCLUSION

¶ 40 For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 41 Affirmed.